IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2006

## ANTONIO HOYLE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-06-53     Roy B. Morgan, Jr., Judge**

_____

**No. W2006-00784-CCA-R3-PC  - Filed April 11, 2007**

_____

The petitioner, Antonio Hoyle, appeals from the post-conviction court's denial of post-conviction relief.  On appeal, he contends that he received the ineffective assistance of counsel which caused him to enter an unknowing and involuntary guilty plea.  Following our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Mike Mosier, Jackson, Tennessee, for the appellant, Antonio Hoyle.

Michael E. Moore, Acting Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

Although not entirely clear from the record, it appears that the petitioner was indicted on one count of first degree murder, three counts of first degree murder in the perpetration of a felony, and one count of aggravated assault.[1]  On April 11, 2005, the petitioner pled guilty to second degree murder and received a twenty-five-year sentence at 100%.  Subsequently, on February 14, 2006, the petitioner filed a pro se petition for post-conviction relief.  Thereafter, counsel was appointed and an evidentiary hearing was held.

_____

[1]We note that the indictments against the petitioner were not included in the record, however, as proof of the charges against the petitioner, the state points to a letter written by the district attorney general listing the charges against the petitioner.  The letter was made part of the record at the post-conviction hearing.

At the hearing, the petitioner testified that he was first represented by Steve Spracher, an attorney from the public defender's office. The petitioner asserted that Mr. Spracher failed to investigate his case. The petitioner explained that he did not recall the details of the automobile accident that resulted in the death of the victim because he was rendered unconscious and placed on a ventilator. Therefore, he relied solely on Mr. Spracher's investigative efforts. However, the petitioner acknowledged that Mr. Spracher shared and discussed the discovery materials with him about five months after the automobile accident. The petitioner also acknowledged that the state made a plea offer of twenty years during Mr. Spracher's representation, but the petitioner rejected the offer. The petitioner stated that he was not informed as to why Mr. Spracher left his case. The petitioner also asserted that he was not made aware of the specific facts of the charges against him.

The petitioner testified that he was later represented by Joseph Howell, another attorney from the public defender's office. According to the petitioner, Mr. Howell met with him four or five times for about 30 minutes each visit and discussed mostly the plea offer. At this time, the state had made another offer of twenty years at 100%. Mr. Howell advised the petitioner to take the plea offer because success at trial was not likely. Mr. Howell informed the petitioner of the state's potential witnesses and the substance of their testimonies. The petitioner asserted that he asked Mr. Howell to investigate Vernie Livingston, an eyewitness to the car accident, but Mr. Howell did not investigate this witness. The petitioner recounted that he met Mr. Livingston at the Madison County jail the same time he was incarcerated. The petitioner also asserted that he noticed discrepancies in the statements of the state witnesses and wanted them investigated. With regard to the discrepancies, the petitioner alleged that a potential witness said she saw the petitioner's "foot on the gas pedal, which she could have not seen from the position on the porch . . . ." Another discrepancy was that a witness reported him in the living room with a screwdriver, but he "couldn't have been in the living room with the screwdriver if they found the screwdriver in the kitchen." According to the petitioner, Mr. Howell told him further investigation of these discrepancies "wouldn't make a difference."

The petitioner testified that he finally accepted the state's offer of twenty years "cause [he] wasn't planning on living anyway, so [he] just gave in." However, Mr. Howell returned the next day and told the petitioner that the plea offer was actually twenty-five years. The petitioner testified that he accepted the offer because "[w]asn't nobody doing anything, and [he] didn't care anymore." The petitioner asserted that at the time of the plea colloquy, he "would have said yes to any damn thing. . . . [He] just didn't care anymore. [He] didn't want it, but [he] had given up."

On cross-examination, the petitioner admitted that both Mr. Howell and the trial judge explained the consequences of his guilty plea and the sentence he was to receive. He also admitted that he told the judge he was satisfied with his attorney's representation. The petitioner further admitted that as part of the plea agreement, the state would dismiss a previous charge of rape against the same victim, now deceased. The petitioner acknowledged that the victim's mother was going to testify that he "busted into her house and her daughter fled because of [him]. . . . And that [the victim] got in the vehicle, [and he] also got in the vehicle with her, and . . . the wreck occurred." The petitioner also acknowledged that the victim's eleven-year-old brother, who was also in the vehicle,

would testify that the petitioner told the victim "I'll kill you. I'll kill you" while in the vehicle. The petitioner further acknowledged that he reviewed Mr. Livingston's statement to police which said the petitioner was hanging out of the vehicle when the car crashed. Also, the petitioner admitted that he received a mental evaluation and was determined capable of assisting in his own defense at trial.

Mr. Spracher testified that his office, the public defender's office, was appointed to represent the petitioner and the case was assigned to him. Mr. Spracher noted that he served as the petitioner's counsel for two months but had to leave due to a back injury. However, Mr. Spracher did not withdraw from the petitioner's case. Mr. Spracher explained:

> Well, I didn't really withdraw. The way this works, our office is appointed and not me in particular, so someone else . . . would come to fill in and take over because they knew I would be out for some months.
>
> . . . .
>
> . . . . The file is continuous. Just someone else took it over and investigated, and based on what we had started, in their own judgment, moved forward with it.

Mr. Spracher testified that during his representation, he ordered and reviewed discovery, investigated the case, followed the route of the accident, viewed the crime scene, discussed the case with the petitioner, and reviewed and advised the petitioner regarding the state's initial plea offer. Mr. Spracher recounted the following:

> As the file shows, . . . [the petitioner] pled guilty to kicking in [the] backdoor. . . . His former girlfriend, [the victim,] she had charges pending against him at the time, and it was set . . . for trial. [She] [r]an out the front door . . . with a nine– or ten-year-old nephew, jumped in the car to get away. He was trying to get in the driver's door trying to stop her, wanted to talk to her, and she was driving off down the street with him one foot in the door and hanging onto the wheel and the door opened, and they went about a block and a half across 70, the median strip and hit a tree, and she was killed, the nephew was badly injured and [the petitioner] was badly injured.

Mr. Spracher then stated that the petitioner did not remember the accident so his investigation was limited to the state's theory of the accident.

Mr. Spracher testified that he discussed with the petitioner the possibility of going to trial. Mr. Spracher recalled that he made no recommendation on the state's initial plea offer because the petitioner had not yet undergone the mental evaluation. Mr. Spracher noted that part of the state's plea offer included the dismissal of an aggravated rape charge pending against the petitioner. However, Mr. Spracher acknowledged that the aggravated rape charge would have been difficult to prosecute without the testimony of the victim.

On cross-examination, Mr. Spracher recalled the petitioner was charged with aggravated assault as well as murder. The basis for the charge stemmed from the petitioner's violation of a court order to have no contact with the victim while he was out on bond in the aggravated rape case.

Mr. Howell testified that he was employed with the public defender's office and became involved with the petitioner's case March of 2005. Mr. Howell recalled that he met with the petitioner on several occasions, discussed the case, and reviewed the discovery materials in depth. Mr. Howell stated that he perceived some weaknesses in the state's case, but overall the evidence against the petitioner was compelling. Mr. Howell believed that there were some inconsistencies in some of the witnesses' statements, but those inconsistencies were only helpful to impeach the credibility of that witness if the case went to trial. Mr. Howell also noted the fact that the petitioner violated a protection order could help the state show motive at trial.

Mr. Howell testified that when he became involved in the petitioner's case, plea negotiations had begun. Mr. Howell recalled that he discussed with the petitioner the potential range of sentence should the petitioner accept the state's offer and plead guilty to second degree murder. Mr. Howell stated that he started preparing for trial, but a few days before the "plea cutoff date" the petitioner renewed his interest in the plea agreement. Mr. Howell explained:

> Well, I believe originally when I went to see him in terms of preparing for trial, he said, "I want to settle the case. . . . [Now] [t]he 15 years had already been . . . rejected. So I explained to [the petitioner], "[w]ell, we'll start with 20 years and see if the State will be receptive to that." I made that offer to General Pickens. He rejected that offer. I believe he met with the family, and they had agreed to a 25-year offer. So I returned to discuss that [offer] with [the petitioner], and he was agreeable to accept [it].

Mr. Howell testified that he advised the petitioner of the possible outcomes if the petitioner proceeded to trial including lesser-included offenses. Mr. Howell recalled that the petitioner only offered members of his family as defense witnesses to testify. Mr. Howell recalled that the petitioner's witnesses were not eyewitnesses to the accident but could only testify as to the petitioner's relationship with the victim. Mr. Howell noted that such testimony was dangerous as it possibly allowed the state to introduce evidence that the victim accused the petitioner of rape. Mr. Howell did not recall the petitioner ever mentioning Mr. Livingston as a possible defense witness. However, Mr. Howell did recall that Mr. Livingston was listed on the indictment as a state witness. On cross-examination, Mr. Howell testified that the defendant was despondent because he was facing a substantial amount of time in prison.

Following the evidentiary hearing, the post-conviction court placed its findings on the record and entered an order denying post-conviction relief.

**ANALYSIS**

-4-

On appeal, the petitioner contends that his attorneys' representation resulted in an unknowing and involuntary guilty plea. He alleges he did not make a knowing and voluntary guilty plea because he did not understand the nature of the case against him, and he was emotionally and mentally despondent at the time he entered the plea.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is de novo with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

In order to establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Strickland*, 466 U.S. at 697; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Strickland*, 466 U.S. at 697.

When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994). When determining the knowing and voluntary nature of the guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In the instant case, the post-conviction found that the petitioner received the effective assistance of counsel and that the petitioner's guilty plea was knowing and voluntary. As the court aptly stated:

> The Court having considered the testimony of the witnesses . . . accredits the testimony of Mr. Spracher and Mr. Howell both of whom represented the petitioner at various stages of the proceedings in this case.
>
> . . . .
>
> It is clear from the proof that the petitioner initially wanted a plea bargain of 15 years and when he could not obtain that [bargain,] counsel began preparing the case for trial.
>
> Counsel obtained discovery and had a mental evaluation done on the [petitioner] which establishes that the petitioner was mentally competent to stand trial and that the defense of insanity could not be supported. The Court finds that the petitioner has failed to prove that he suffers from any mental condition that would in any way interfere with his ability to understand the consequences of his guilty plea or that would effect his ability to enter a knowing and voluntary guilty plea.
>
> It is clear that counsel met with the petitioner on various occasions and provided discovery to the petitioner and discussed the case at length with the [petitioner].
>
> The only witness named by the petitioner that he claims was not interviewed is clearly listed as a state's witness and gave a statement to police that could be damaging to the defense if called to testify. This statement was contained in the state's file and [was] part of discovery obtained by counsel.
>
> Regarding the effective assistance of counsel the Court finds that the petitioner has failed to prove this issue by any proof but especially by clear and convincing proof. It is clear that trial counsel made numerous trips to visit the [petitioner] . . . . Counsel obtained discovery and provided the discovery to the [petitioner]. Counsel discussed the case with the petitioner and gave his professional assessment of the possible out comes [sic] and obtained a negotiated plea that the [petitioner] even testified that he chose to accept based upon the discovery and counsel's assessment of the case.
>
> The petitioner has failed to call any witness as to any issue raised that would demonstrate any proof or testimony that would in any way alter or effect the out

come [sic] of the case or that in [any] way demonstrates that there is anything that counsel could have done that was not done.

. . . .

The petitioner's decision to plead guilty based upon the proof before the Court was made knowing and voluntary and was in no way effected by any mental incapacity or anything that trial counsel did or did not do. It is abundantly clear from the transcript of the guilty plea that the petitioner was fully advised of all rights and understood the nature and consequences of his plea and was satisfied with trial counsel's performance at the time of the plea. When specifically addressed by the Court as to the rights he was waiving he readily acknowledged his rights and made the decision to enter his guilty plea after a thorough and full explanation of the sentence he would receive.

Upon appellate review, the record does not preponderate against the court's findings that the petitioner received the effective assistance of counsel and that the petitioner's guilty plea was knowing and voluntary. Accordingly, the petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
J.C. McLIN, JUDGE